Mr. O'Connor, I'd like to address the question the court asked on July 5th, and that is what effect the Sanders case has on Mrs. Mayfield's case. Ultimately, I concluded that Sanders doesn't apply to Mrs. Mayfield's case because of this court's prior decision in April of 2006. Contrary to the lower court's opinion, the VA did not accord Mrs. Mayfield with a post for an in-place assistance notice of adjudication. The supplemental statement of the case of January 2002 is not a VA adjudication decision at all. It wasn't one in May 2005, and it wasn't one until after this court issued Mayfield in April 2006. All right. The second issue I'd like to address, Your Honor, is D. Whether or not the letter that the VA sent to Mrs. Mayfield in March 2001 gave her adequate VC and whether it's under 5103A of Title 38, the answer to that is no, Your Honor. Let me stop you there. Whatever can be said about the wording of the March 15th notice letter by the Veterans Department? Within two weeks, she wrote back, and she seemed to understand exactly what she needed, which was medical evidence that would connect the varicose vein condition with the causes of death, because that's what she asked for in her March 29th letter. So what better proof could there be of the clarity of the notice that, in her response, she hit the bullseye? She stated exactly what she needed. Well, Your Honor, it's because the language of the statute is plain, and it says that the secretary shall notify the claimant of any information or medical evidence not previously provided to the secretary that is necessary to substantially explain that. And we all know that previously the secretary had been supplied with the VA treatment records and with the death certificate. And so the March notice letter added to that a third category, not previously supplied, which was medical opinions, obviously relating to the cause of death. And since it was clear to her that the only other cause of death beside that listed on the death certificate of congestive heart failure resulting from coronary artery disease would be the question about whether the varicose vein condition in the legs also contributed in some material way. To the congestive heart failure. And she seemed to get that exactly right when she asked for opinion, medical opinion, that for the VA to get, which would address, and her words were precise, any connection between the varicose vein condition and the death. She seemed to understand precisely what the, quote, missing evidence was. Again, Your Honor, Mrs. Mayfield wrote back to the VA, but the problem here is that she might have guessed. I mean, we still don't know what it is that Mrs. Mayfield actually needs to submit to the VA. We have the Board of Veterans' Appeals saying that a notifier of the evidence that's necessary, and we have the Court of Veterans' Appeals affirming that finding. But yet, if we run the information of that March letter through the SIB of 5103, there is no statement in that letter of March 2001 that actually says, Mrs. Mayfield, we're putting you on notice that you must give us this piece of evidence, whatever it might be. What about the language about medical opinion? Actually, if Your Honor read the entire letter, the entire letter is contradictory. In this section of the letter, they actually say to Mrs. Mayfield in the letter, if we have asked you to submit evidence, you should give it to us within 60 days. That may be, but the real part of the question seems to be whether it adequately put her on notice of the need for a causation opinion relating vericose veins to the death of a veteran, her former, her late mother. Why isn't that clear from page two of the letter? Establish entitlement for benefits. The evidence must show three things, the cause of death, an injury, disease, or other medical service, and the relationship between the cause of death and the injury, et cetera. Because, Your Honor, those are the elements of the service connection claim. They are not the actual – they are not a statement of Mrs. Mayfield of the evidence that she needs to submit to the VA if she's to substantiate her claim, which is to prove her claim. Let me ask you another question because you, in your briefs, have made some argument, pointed on the idea of medical specialists. And you seem to be suggesting that if the VA thought a medical opinion by a specialist, presumably a cardiologist, I guess in this case, or perhaps a pathologist, but let's say a cardiologist, that they needed to tell her that. You know, Mrs. Mayfield, you've got to go get a cardiologist to give an opinion on any linkage between Verica's veins and congestive heart failure. Yes, Your Honor. And there was no such reference to the need for a particular specialist's opinion in the March notice letter. No, Your Honor. And that is one of our points, is that with the passage of the Veterans Claims Assistance Act, Congress would expect that Congress would want the VA to tell Mrs. Mayfield and other claimants what it is they need to submit to claimants to substantiate their claim. That was the whole point of the Veterans Claims Assistance Act. So if the medical evidence that the VA acquired after Mrs. Mayfield filed her claim didn't substantiate her claim, Your Honor would expect that Congress would want the VA to tell her that. Well, that's what we're trying to define here. Yes, Your Honor. Now, let me ask you this. She wrote back on March 29th in response to the notice letter, and I tried to characterize my understanding of just of her letter, her request, and then did they go out and get a medical opinion? It's very confusing on the record here what happened after the March 29th request. Did they have a new medical opinion done by a VA doctor? Yes, they did, Your Honor. Yes. And what's the date of that? I'd have to inform you, Your Honor. Well, approximately. Summer of 02? I think it was 2002, Your Honor. Okay. And was that by a VA physician? Yes, Your Honor. Was it a cardiologist? I don't recall, Your Honor. Do we have that doctor's report in the record here? Not in the joint appendix, but it is in the appendix, Your Honor. I'm not following you. It's in what appendix? It's in the full record? Yes, Your Honor. Yes. That we don't have? Yes. That we can get? Yes, Your Honor. All right. Is insufficiency of notice an application of law a fact? Ordinarily, it is, Your Honor. But in this particular case, we have tried to focus on the language of the statute and to point out or emphasize it. But ultimately, isn't the question whether the notice in the letter is sufficient? Looking at the facts. Your Honor, I'd have to disagree with that in this particular case. The information that the board and the lower court say gave her, that the letter provided her with, was actually information evidence that was already provided to the Secretary and the statute. So the court doesn't even need to look at the record here in this case. The court can just simply say, well, in any particular case, if the VA sends a letter to a veteran and it advises the veteran of evidence that the Secretary already has, can that be in compliance with the statute? And the answer to that would be no, Your Honor. Mr. Herring, let me ask you this. Are you, in effect, arguing that when Congress used the word substantiate in 5103a, they were using it in the sense of to prevail on the claim? Yes, Your Honor. That's the ordinary meaning of the word. Well, perhaps. But it seems to me that an alternative meaning of the word substantiate could be support. That they have to tell the veteran or the claimant, he or the widow, the sort of medical evidence that would need to be submitted to be supportive of the claim. It might win, it might not win, but it would be supportive. So if you're telling us that no, no, substantiate means prevail, not support, what's your basis of saying that? Is there some legislative history we don't know about? There is, well, the first thing is, Your Honor, just the use of the ordinary language of the common meaning of the word substantiate. But there is legislative history. But the legislative history of what there is actually supports the latter part that says to support the claim as opposed to actually prove the claim. Well, am I misconstruing your position when I suggest that you, in effect, want us to construe the statutory word substantiate as a synonym for prevail on the claim? Yes, Your Honor. I'm misunderstanding you or I'm understanding you? No, I'm sorry, I'm hurt. Well, counsel would like the court to insert the substantiate to prove the claim, the word substantiate to actually prove the claim. Any other questions, Your Honor? Now, you had a major set of arguments against treating the January 2002 SSOC, Supplemental Data Case, as a decision letter. And, of course, we have all your arguments. But suppose the decision had been made the day before January 16th and the sole service provided by the SSOC issued the next day was to announce that decision made on the 15th by the regional office officials. If that were what happened, it seems to me that's okay with you. Yes, Your Honor, it would be. Because there would be a separate actual adjudication of the claim and the supplemental statement case would just simply be announcing it. It would actually be able to appoint to a rating decision. But would you then be complaining that, well, there was no document recording the decision the day before? Oh, I think I would, yes, Your Honor. It would be nice to see the decision, Your Honor, so that we could actually see it. So you're saying even if mentally somebody made a decision prior to January 16th when they issued the SSOC, since they didn't write it up, it didn't really happen? Yes, Your Honor, we have no way of knowing who made the decision. What difference does it make whether the decision is made and announced simultaneously in the SSOC on the 16th of January versus having been made on the 15th and merely announced in the SSOC on the 16th? Well, Your Honor, with the separate adjudication, VA has a regulation, I think it's 3.104, that actually says that a decision must be made by a duly constituted rating agency. A statement of the case apparently can be prepared by anybody. Anybody who works with the VA can go to the computer, hit the keys, and generate a supplemental statement of the case. I didn't understand very well the distinction between initial decisions being made in cases like this by a rating agency versus a DRO. Can you explain that? Well, Your Honor, the DRO, the Decision Review Officer, was a program that the Secretary adopted in 2001 after notice and comment. It was created in order to, after a claimant filed a notice of disagreement to a decision, within a specific time period, the DRO has authority to review the decision without any deference to the original denial. And then if the Decision Review Officer's decision is not favorable, In this case here, we're dealing with the other, the rating agency, or rating authority, whatever the term is. And in effect, that's the RO, that's the Regional Office. Yes, Your Honor. In this case, it was on remand from the Board of Veterans' Appeals. Okay. Do you want to save the rest of your time? Yes, Your Honor. Thank you very much. Thank you. Mr. Hockey? Yes, Your Honor. I have a question about the brief in this case. I take it that the government expects us to read these briefs very carefully, repeatedly if necessary, and spend hours and hours poring over them. And if that's correct, I would expect the government to take equal care to say what they mean and not say things that are wrong or inaccurate or confusing. I want to direct your attention to page 11 of the brief that you signed, the red brief in this case. Thank you, Your Honor. Heading to the second line in the paragraph that begins at the bottom half of the page. My version I have in pen struck out the word not in the second sentence. Yeah, you said the opposite of what you seem to want to be saying. So it's kind of an important thing for lawyers to pay attention to, the presence or the absence of the word not, because obviously, if you get it wrong, you're saying the opposite of what you want to say. Yes, I agree, Your Honor. I think the context of the response, though, would quickly apprise the reader of the error in the second sentence. Every day counsel and I reviewed the brief again prior to this argument and attempted to point it out, but haven't. Now, on page 26, there are three paragraphs, and in the middle of the page, there's a paragraph that seems to have a sentence fragment at the end of the paragraph that just trails off into nothing. There's no grammar. There's no conclusion. There's no thought. There's no way to understand what the hell is being said. That, again, I think was a result of the final copying and editing process. I noticed that, again, You blame the paralegals, not the attorney who signed the brief? I prepared the brief, Your Honor, but in fact I didn't. Did you proofread the brief before it was filed, yourself? I was out of town. So the answer is no. No, I prepared the brief. Did another attorney proofread the brief in your place? Yes, Your Honor. Who? I believe Mr. Hughes proofread the brief in my place. Who? Mr. Hughes. Hughes. But he didn't sign the brief, did he? He did sign it. Yeah. And that sentence fragment in the middle of page 26 is actually part of a larger paragraph that's contained in the brief. Somehow, when somebody did a cut and paste, they left that in there and did not get picked up on the final review. All right. Well, I don't want to charge you with time to sort out these proofreading problems, but it certainly helped at least one member of this panel that the government was careful with proofreading so that when we study these things and go over and over and over them, we're trying very hard to master every little argument and nuance in the case so that we're not having the standing kicked in our eyes. I just apologize, Your Honor. Again, it does look like some sort of last minute oversight, and unfortunately, which I was there to have corrected it, I was not. Trying to address the issues that are presented, I would like to start initially with the notice question. It's come up repeatedly, not only in this case, but in some of the other cases that have been before various panels before this court with respect to what notice is required as part of the DCAA. This court, in the earlier decision in this case, followed the Federal Corrections Court's lead in Pellegrini by announcing that the notice, the DCAA notice, is issued at the outset of a claim process prior to the initial adjudication. Well, in the normal case, but not in a case like this where the initial adjudication had already occurred before the act was even passed. That's a different question I also want to address, Your Honor, as to whether or not there could be any error in that situation. But getting back to the first question of what, you know, when you read the statute as a whole and what's required, not only does the plain language of the statute, which sets forth, as I think the court has already held, that the notice is issued at the outset of the case upon the submission of a complete or satisfactory or complete claim application, and to precede any adjudication. To address the question I think that you may have raised yourself, Chief Judge, yourself, the legislative history in the act does indicate that the term substantiate is to tend to support, as I recall, I don't have legislative history in front of me, but I've read it many times, and we've discussed this issue. Essentially what's being argued in these cases is that the claims are seeking some sort of pre-adjudication upon I don't agree with that. You said that repeatedly in your brief, but I don't see how that is so. It seems to me the argument they're making is give us some case-specific guidance as to what medical document we the claimant need to run out and try to get if we can get it. That's not the same as saying tell us whether the evidence already of record wins the case. So I don't understand how you would say that the request for case-specific documentary identification would require pre-adjudication by anybody at the VA. Well, our position is simply based upon the representations that have been made before this panel. Numerous cases in which I personally appear where the only type of evidence that could be being sought, given the records that are before the panels in these other cases as well as this one, in which you have the May 15th letter, which specifically sets forth as one of the elements that's necessary to be fulfilled the nexus element, which is often the case in some of these situations, provides the examples of the type of evidence that could be provided, identifies records that have already been obtained. And so what's left? And I think, as Mr. Hammond or Anne indicated earlier this morning, is well, what do I need? Essentially, what's wrong with the evidence that you already have? That to us is requesting pre-adjudication upon the evidence that's either available or will be made available or obtained by the VA prior to the actual adjudication itself. We find no support in the legislative history of the plain language of the statute or the regulation implementing the statute that there's some requirement to provide that type of notice. In fact, it's just not. Well, let me understand where you're going here. My question had to do with case-specific versus generic. Now, I understand Mr. Herring's position to be that the advice in the notice letter has to be case-specific. Do you agree with that or you don't agree? I agree that the VA makes every effort to make case-specific notice. Not what effort they make. What the law requires. Does the law require that the notice in the notice letter, in order to comply with the statute, be case-specific? We will say that the VA Doctrine's Court has already held in numerous cases that there is a element of specificity involved in the notice. Now, I'm not quite comfortable, Your Honor, with saying something is case-specific without having a further idea of what the definition the court may be using in this hypothetical situation. It's not hypothetical. It's this case. Mr. Herring's argument is that in this case, there was a decided lack of case-specific identification of necessary but not previously submitted medical evidence. All right. And there are two answers to that. The first one, to directly respond to your question, Your Honor, is we disagree. We think that the record clearly shows that Ms. Mayfield was informed of what was necessary to substantiate her claim. Well, she was told medical evidence. That's the pertinent phrase, at least in my view, in the entire long letter of March 15th. Medical evidence. But, you know, there's medical evidence, and then there's medical evidence, and then there's medical evidence. Medical evidence that answers what question? Well, Ms. Mayfield knew in the letter documents the fact that Mr. Mayfield had died of congestive heart failure and that the allegations had been in her initial claim that the reason he died was because he was not able to get the appropriate treatment given his in-service vein condition. So the March 15th letter apprises Ms. Mayfield of the requirement to say, okay, what can you establish a connection for us? And Ms. Mayfield understood that to be the case. The word connection doesn't appear anywhere in the notice book. Oh, I think that it does, Your Honor. Well, you are very correct. I'm referring to page 3. There's a separate section of this what information or evidence do we still need from you that carries over to page 3 in the letter. Right. And getting on page 2, I think, as Judge Lurie may have noted earlier, the relationship, I think, is the term that the letter uses instead of connection. That's certainly a synonym. I want to add, before we get too far down this road, I do think we're treading into areas that are outside this court's jurisdiction. Well, you've argued that, and if we agree, then obviously we won't decide it. If we don't agree, we might decide it if we have to. Thank you. That's why I think, Lord, you have waived any jurisdiction. I just wanted to make that clear, Your Honor, and I recognize that nature of the inquiry. But again, we believe that in this case the notice was satisfactory. What about the specialist versus general medical practitioner issue? If the Veterans Department view was that a cardiologist's opinion on causation would be necessary, perhaps there's an argument that the notice letter should notify the claimant. You will need to get a cardiologist's opinion. I'm not sure that's an issue, Your Honor. I mean, the Veterans Court in its decision specifically holds that if the situation requires a specialist, the VA should tell them. On page 4 of the appendix, which is page 4 of their decision, they specifically hold it at the bottom of the page and then make the application of law to fact conclusion that in this case that requirement is not here. So I don't know if that's even an issue that's properly presented to this court. Well, the question seems to be whether 50% disabling varicose veins of the legs that this veteran, deceased veteran, suffered for several decades could have been a secondary but nevertheless material causation of the congestive heart failure that killed her, the death of her. I think that we have to, in this case, given the court's limited jurisdiction, defer to the Veterans Court's finding that, given the notice that was provided, the request by Ms. Mansfield for a medical opinion. You're not answering my question. Given the factual circumstances of this case, doesn't it seem like you would need a cardiologist's opinion? I think that we have the record below indicating that, well, first of all, we're not sure, given that the opinion wasn't actually contained in the appendix, whether or not a cardiologist did provide some sort of medical opinion with respect to potential nexus. It may have. And it may have led the board and the court to conclude in this case that any requirement to obtain or to apprise in this main field of the requirement for a specialist opinion was satisfied. Have you read the post-notice medical report? I have. In preparation for today's hearing, I have not. No. Ever? I believe I did look through the papers when I got the potential record several months ago. I mean, I did look through the papers. Now, do I remember the document in question? No, I do not remember the document in question. But do you agree with Mr. Horan that sometime in the summer or so of 2002, there was a new medical review by some VA physician, whatever the specialty or non-specialty might be? I cannot attest to the date. I do recall, though, that subsequent to the March 2001 notice, and I did review, there were documents that were submitted. And, in fact, I think the subpoena statement in the case references some of those documents. August 2001, I think is when that – it's at page 1019 of the appendix. Right. I think that's what it was. So, yes, there were documents obtained. There was an opinion obtained. I believe there were some claim statements made by Ms. Mayfield that were also submitted and reviewed. In the interim between March 29 and January 16 of 2002? Correct. Yes. Do we have those? I don't believe so, Your Honor. I believe what you have is the March letter, and you have the supplemental statement of the case. Again, from our perspective, those documents aren't relevant to this court as those kinds of questions in our position would be outside the court's jurisdiction. Well, that may be right, but the only point of hesitation I have is that the statutory language, if I'm recalling it correctly, is any medical evidence, not previously submitted, necessary to substantiate a claim. So I guess there might be an argument that we're defining what any medical evidence means. That's statutory language. That's not case-specific, isn't it? Well, I mean, Your Honor, I would agree that a question about should the notice identify, in the instance where a specialist opinion might be warranted, should the notice require something? It should. It must. I mean, it's a statutory command. It's not a request. But in this case, that issue is not properly before this court. As the Dutchess Court has already found, the requirement, they've already imposed it in other cases, in cases they cite it before their opinion. And they held in this case that there's no error in that regard. So that's not a legal – I would agree that would be a legal question, but it's not one that's properly presented to this court. As far as the – I want to briefly discuss, if I may, we didn't really get to the supplemental statement of the case. I think our position is well laid out in the brief, and that is that at Part 19 of CFR – 38 CFR, when the court goes through all the requirements in Part 19, it's clear that a statement of the case, and in certain circumstances a supplemental statement of the case, may and will – well, the statement of the case will almost always contain an adjudicated decision. I mean, we went through this way back in several cases before this court about the processes. If I could just interrupt for a second. When you say will contain an adjudicated decision, are you distinguishing between the report, a separately made adjudicated decision, or will it be the instrument of the decision? The latter, Your Honor. I think – I mean, what typically happens in these cases? Isn't there typically a separate piece of paper that is the decision which the SOC or the SSOC then reports? Or does that separate piece of paper not exist in a large number of cases? I would – I haven't done an analysis of all the situations to say that I'm sure there are situations in which a rating officer decision – decision – RO decision is issued and then, again, referred to in the statement of the case. But those situations with which I am familiar and, more importantly, the regulatory scheme, which is what we are addressing here from the legal argument perspective, provides that upon issuance of a decision, which is pursuant to 5104, Title 48, the opportunity is provided to the claimant to challenge that decision. And the claimant submits what they've called a notice of disagreement. Okay? Now, a lot of this has to be in the context of the DGRA, which adopted this preexisting format. When the NOD is submitted, that calls – is 19.26 CFR required. The agency must then reevaluate the claim to determine whether, A, additional development may be warranted based upon information identified in the NOD, or whether a re-review is warranted based upon information contained in the NOD. And if so, they must conduct that development or review before they do anything else. So that is a requirement imposed upon the agency of original jurisdiction who's issued the initial rating decision to essentially do it all over again, taking into account what information is identified in the NOD as well as any other information that the claimant may submit as far as evidence along with the NOD. That's 19.26. And upon conclusion of that reevaluation, there are basically, if you will, two choices for the agency of original jurisdiction. They can, A, grant the benefits, which I don't think anybody would dispute is an adjudicated decision. It just so happens that it results in the granting of the benefits. However, if there is no grant of the benefits, or in assuming we're setting aside partial, the next step is the issuance of the statement of the case. And an issuance of the statement of the case is 19.31, I believe, requires the, let me just verify it for you, Your Honor. 19.31, that's right. I'm sorry, 19.29. The 3.1 is the statement of the case, right? 3.1 is actually a supplemental statement of the case. Oh, it's just supplemental. But 19.29 is the statement of the case. That's why I thought I'd better verify it. And in there, it provides, as we indicated in our brief, the same information that's contained in the original decision, which you would find under 38 U.S.C. 5104. And that is discussion of the evidence, summary of the applicable law, and then a determination by the agency of original jurisdiction on each issue and the reasons for such determination in respect to which this agreement has been expressed. So that's an adjudication. And it contains a decision, and it contains an explanation of why the regional office ruled as it did. And it's often referred to as a continued denial of the claim. And that's important as part of the VA review process because if the claim is continued denied, then the statement of the case is issued to alert the veteran claimant that, no, we're still not giving you benefits. Do you want to continue? Do you want us to transmit the record to the Board of Veterans' Appeals Board of Review? And that requires action on the part of the claimant in the submission of, as the regulations provide, what's called the VA claim 1.9 or 1-9 or its equivalent in writing, which is often referred to as sort of, well, it's the completion of the appeal process. And then that package, once the VA receives that, the VA then can transmit the record to the board. Well, I thought there was an intervening step that when the claim is continuing to be denied in a statement of the case or supplemental statement of the case, that the claimant is then notified, denial is continuing, and we will transmit the record to the board, and the appeal will go ahead at the board level after 60 days. But meanwhile, you have 60 days to submit more stuff if you come up with any further edits. Absolutely correct, Your Honor. I'm sorry if I misspoke. That's absolutely correct. And in fact, that actually raises the question with respect to supplemental statements of the case. Because as the court points out, the veteran is allowed to, again, supplement the record prior to it actually being transmitted to the board. In fact, he can do it afterwards too. But with respect to Your Honor's point, he can supplement the record prior to it's transmitted to the board. And if that occurs, our order will then again determine whether another review may be required. And if that's the case, then we get into supplemental statement of the case territory when we're talking about the actions of the board prior or actions of the regional office prior to the board. Now, he says the statement of the case or supplemental statement of the case when it's giving this additional 60 days for submission of more evidence, is that also under an obligation from the act to identify any medical evidence necessary to substantiate the claim? Well, if I understand Your Honor's question, I think the requirements with respect to notice contained in the statement of the case would be those requirements identified in both 19.29, the regulation, as well as, I believe, 7105, Title 38. I'm talking about 5103, the notice of any medical evidence not previously provided that is necessary to substantiate the claim. Well, again, as I think this court's held in Mayfield, the notice required of 5103 small a is that pre-adjudicatory notice that would then have been issued, presumably, in any case. Yes, but it seems like we have rolling adjudications here in the scenario that you're describing. So I'm just asking a logical question. Well, if you have a series of decisions and they're all no, is there a requirement under the notice assistance statute each time you say no to identify what's missing? No. The answer is no, not under that statute. There are requirements associated with each of the other documents, which we discussed, I believe, in this court discussion in Mayfield case. And what we would like the court to understand is, and this is the question that the President is going to be claiming, because the question is distinct. There's a distinction between can you identify a notice error under 5103 as opposed to we've identified a notice error, but had that error been cured, not by virtue of a supplemental 5103 notice necessarily, but by virtue of notice pursuant to 7105 or 19.29. So it's a slightly different inquiry, which this court addressed. I guess the word initial in the VCAA strongly supports, at least in the future cases, maybe not in these transitional cases, arguably, but in the future cases, that it's a one-time notice. And it's before the first adjudication, normally at the R01. And I would think, actually, I think the court in Mayfield put it well when it said it's not necessarily a single document, but it has to be pre-adjudicatory. And that's what the court held. And again, I would just, I think, echo Mr. Hanscom's comment earlier with respect to the Sanders question raised in the order the court sent out last week. Initially, the only error in this case found by the Veterans Court was one of timing. It found initially that the, if you will allow me to refer to the elements that the Veterans Court did in its Mayfield case, which I guess now are maybe not relevant to a prejudicial error question given Sanders. But the court in this case found that the one, two, three, and four elements had been satisfied by virtue of the notice issue. They did find, though, as this court noted in its decision in Mayfield, that it was impossible for the VCA notice to have been issued prior to the initial adjudication because there was no VCA at that time. And we would submit that in that case, there is no violation of the statute. What happened practically after the enactment of the statute, and given that there is no necessarily clear guidance from Congress as to whether or not the VCA should apply to pending cases, cases pending before the secretary, as opposed to cases pending before the Veterans Court, which there was some guidance with respect to that, as this court has discussed in several cases. What happened is the VA took it upon itself to, through its regulation 3.159 implementing the VCA, to apply the notice requirements to its cases pending before the secretary at that time. This is one of those cases that got caught up in that. And that's why you'll see in this case there wasn't initially a board remand for issuance of the notice because the package hadn't actually been transmitted to the board at that time. Instead, then, before transmittal, the secretary issued a notice, allowed Ms. Mayfield to respond, collected some additional information. And that's March 15th. Yeah, that's March 15th, which was then addressed in the supplemental statement of the case. That's the procedural history in this case. In other cases, of course, that may have been… Let's not worry about the other cases. So, but for that reason, we don't believe that there's any requirement in this case to remand for purposes of trying to comply with Sanders. We believe this court actually already addressed this in its earlier decision in this case. Thank you, sir. Mr. Moran, you have a brief period of rebuttal. Thank you, Your Honor. One point I want to make, Your Honor, is that this is not the first time that Mrs. Mayfield has been to this court. In 2006, the government was on record before this court as arguing that the supplemental statement of the case of January 2002 was a VCA notice document. And what… We have that very well set out in the case. Thank you. So, unless the court has other questions, I conclude and just submit that the court should reverse the lower court and remand the case so that Mrs. Mayfield can have her case adjudicated by a VCA regional office. Thank you. Thank you, Your Honor. All rise. The Honorable Court is adjourned until tomorrow morning at 10 a.m.